**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul LoPresto, | No. CV-12-00739-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is the appeal of Plaintiff Paul LoPresto, who challenges the Social Security Administration's decision to deny benefits.  (Doc. 1.)  For the reasons set forth below, the Court affirms that decision.

## BACKGROUND

Plaintiff Paul LoPresto, a Vietnam War veteran, claims that he has been disabled since May 1, 2005. (R. at 25.) He is around 63 years old and has a high school education. (*Id.* at 36, 54.) Prior to the onset of his alleged disability, LoPresto worked as a bus driver, secretary, and golf course pro shop worker and ranger. (*Id.* at 71.) LoPresto submitted a Title II application for disability and disability benefits on February 4, 2008. (*Id.* at 25.) The Social Security Administration ("SSA") denied his claims on August 21, 2008, and again on December 31, 2008. (*Id.*) LoPresto subsequently requested a hearing, which was held on April 20, 2010 in Phoenix, Arizona. (*Id.*) On July 28, 2010, the Administrative Law Judge ("ALJ") issued his decision finding that LoPresto was not

disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 37.)

To determine whether LoPresto was disabled, the ALJ undertook the five-step analysis detailed at 20 C.F.R. §§ 404.1520(a) and 416.920(a).[1] (R. at 26.) He determined at the first step that LoPresto had not engaged in substantial gainful activity since May 1, 2005, the alleged onset date. (*Id.* at 27.) The ALJ then found that LoPresto had the following severe impairments: chronic knee strain, major depression, generalized anxiety, a post-traumatic stress disorder ("PTSD"), and obesity. (*Id.* at 28.) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the SSA's listed impairments. (*Id.*)

At that point, the ALJ made a determination of LoPresto's residual functional capacity ("RFC"),[2] concluding that LoPresto could perform medium unskilled work as defined in 20 C.F.R. § 404.1567(c), except that he cannot climb, squat, kneel, crawl,

_____

[1] Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] In greater detail, a residual functional capacity ("RFC") is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96–8p. In particular, the RFC assessment must describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* The RFC determination may be based on a wide variety of evidence in the record–the claimant's medical history, laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id*

crouch, use his lower extremities, push, pull and interact with the public. (R. at 30.) Still at step four, the ALJ concluded that LoPresto was unable to perform any of his past relevant work. (*Id.* at 35.) The ALJ therefore reached step five and found that LoPresto was not disabled because there are jobs that exist in significant numbers in the national economy that he could perform. (*Id.* at 35–36.) The Appeals Council declined to review the decision. (*Id.* at 1-3.)

LoPresto filed the Complaint in this action on April 6, 2012, seeking the Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter became fully briefed on December 21, 2012. (Docs. 20, 21, 25.)

**DISCUSSION**

**I.    LEGAL STANDARD**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). It "is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Subject to the Ninth Circuit's standards in particular cases, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II.    ANALYSIS

LoPresto argues that the ALJ erred by: (A) improperly discounting the assessment of his social worker, Dawn Malone and improperly assigning substantial weight to the opinion of the agency doctors, (B) improperly discounting LoPresto's own testimony of the severity of his symptoms, and (C) failing to follow the function-by-function determination described in Social Security Ruling ("SSR") 85-15.[3]

### A.    Weight Assigned to Medical Sources

LoPresto challenges how the ALJ dealt with three medical sources: his licensed clinical social worker Dawn Malone, consultative examining physician Dr. Frederick Obitz, and agency reviewing physician Dr. Eugene Campbell.

#### 1.    Applicable Standards

The SSA regulations describe a hierarchy of medical sources. The Parties dispute how the ALJ should treat the opinions of different medical sources. The regulations invite the ALJ to review opinion evidence in making a disability determination, and place a premium on "medical opinions." 20 C.F.R. § 404.1527(a). "Medical opinions are statements from physicians and psychologists or other *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2) (emphasis added). "Acceptable medical sources," in turn, are "[l]icensed physicians", "[l]icensed or certified psychologists", "[l]icensed optometrists," "[l]icensed podiatrists," and "[q]ualified speech-language pathologists . . . ." *Id.* § 404.1513(a); *see also id.* § 404.1502 (referring to § 404.1513(a) for definition of acceptable medical source).

The regulations then craft several tiers of those medical opinions. The opinion of a

---

[3] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (quoting *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006)).

treating physician carries more weight than non-treating medical sources. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(c). Moving down the chain, the opinions of examining physicians generally carry more weight than those of non-examining physicians. 20 C.F.R. § 404.1527(c); *Orn*, 495 F.3d at 631. As the Commissioner has stated, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p. And so "the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.*

The hierarchy described above applies only to "medical opinions", which are those opinions that come from "acceptable medical sources." For purposes of this case, Drs. Obitz and Campbell are acceptable medical sources. In addition, other licensed physicians who treated LoPresto and whose notes are part of the record are acceptable medical sources.

Malone, a licensed clinical social worker, is not. 20 C.F.R. §§ 404.1513, 404.1527; *see also* SSR 06-03p. She is an "other source," albeit a medical one. The SSA has recognized the value of opinions from other medical sources:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. Nevertheless, contrary to LoPresto's claim, Malone's opinion carries less weight than if she were a licensed physician. An ALJ can discount an opinion from an

"other" medical source like Malone so long as he gives "reasons 'germane' to [her] for discounting." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). So long as the reason for discounting is "germane" and has evidentiary support in the record, the ALJ does not act improperly.[4]

For the reasons described above, the Court declines to accept LoPresto's argument for why the "germane" standard articulated most recently in *Molina* applies only to lay witnesses, and not to medical sources. That argument runs against the language of the regulations and the Ninth Circuit cases interpreting those regulations.

### 2.    Licensed Clinical Social Worker Malone

Malone worked with LoPresto from February 12, 2008, through May 30, 2009. (R. at 32.) She saw him for PTSD, major depressive disorder (recurrent), and adjustment disorder with mixed anxiety and depressed mood. (*Id.*) Throughout the course of their visits, she observed from LoPresto's actions and reports of his actions that he had anxiety, depression, anger, and an impaired ability to manage daily living activities. (*Id.* at 625–37.) She administered a "Mini Status Examination," which assessed LoPresto's basic cognitive functions. (*Id.* at 627–30.) LoPresto scored in the normal range. (*Id.*)

In a letter to the Veteran's Administration ("VA"), Malone stated that LoPresto's symptoms "have all been consistent and persistent[,] . . . chronic and severe." (*Id*. at 638.) She described "frequent panic attacks while driving." (*Id.* at 639.) She concluded her letter with the following observations: "Mr. Lopresto relives the trauma of his participation in Vietnam on a daily and consistent basis. Not only does the trauma infiltrate his sleep . . . , but also is intrusive to his thoughts during waking hours. He does not and (cannot) trust others and has had several failed attempts at employment and socialization endeavors." (*Id.*)

---

[4] SSR 06-03p provides examples of the factors an ALJ might consider when evaluating "other" medical sources: "[h]ow long the source has known and how frequently the source has seen the individual; [h]ow consistent the opinion is with other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s)."

In connection with LoPresto's SSA application, Malone filled out a checkbox form entitled "Medical Assessment of the Patient's Ability to Perform Work Related Activity." She rated as "severe"[5] LoPreso's degree of deterioration in personal habits and interests, as well as his ability to respond appropriately to co-workers and to customary work pressures. (*Id*. at 452–53.) She rated as "moderately severe"[6] LoPresto's degree of restriction in daily activities and abilities to relate to other people; to understand, carry out, and remember instructions; to respond appropriately to supervision; to perform simple, complex, repetitive, and varied tasks; to complete a normal workweek without interruptions from psychologically based symptoms; and to perform at a consistent pace without an unreasonable number/length of rest periods. (*Id.*) A vocational expert testified at LoPresto's hearing and opined that those limitations would preclude all work activity on a sustained basis. (*Id.* at 75.)

The ALJ gave two reasons for discounting Malone's opinions on the degree of LoPresto's limitations. In his view, the opinion was "inconsistent and appears to be more restrictive than the medical record of evidence documents, in light of the fact that Ms. Malone found the claimant's mental limitations to be significantly more severe than any other medical opinion, including those of examining physician Dr. [Obitz] and the State Agency." (*Id.* at 35.) In addition, the ALJ noted that "[t]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (*Id.*) For the Court to affirm, these reasons must be "germane" to a licensed social worker like Malone and supported by substantial evidence in the record.

There is substantial evidence of inconsistency to support the ALJ's determination. In his order, the ALJ primarily relied on the divergence of opinion between Malone and Drs. Obtiz and Campbell. As discussed below, Dr. Obitz was an examining physician and

---

[5] Extreme impairment of ability to function. (R. at 452.)

[6] Impairment which seriously affects ability to function. (*Id.*)

Dr. Campbell was a non-examining physician. Both came to conclusions regarding the severity of LoPresto's symptoms that were quite different than Malone. Because both Dr. Obtiz and Dr. Campbell are considered acceptable medical sources and Malone is not, the fact that the conclusions of a non-acceptable medical source differed from the conclusions of acceptable medical sources would be a germane reason, supported in the record, for discounting Malone's opinion.

Moreover, there is evidence from LoPresto's other physicians that would allow the ALJ to find an inconsistency. The ALJ set forth several examples where LoPresto's treating physicians at the VA, Drs. Martha Gonzales and Himanshu Patel, report that LoPresto is "doing well" or "doing good" on his medication regime. (*Id.* at 31, 32.) The medical records that the ALJ cited support those statements and show that LoPresto often reported improvement and effectiveness of medication. (*Id.* at 469–80, 496, 641–85, 696.) For example, a report from February 26, 2009, states that LoPresto "has improved over the past few years. [He] [d]enies current depressed periods . . . [and] denies irritability or thoughts of harming self or others." (*Id.* at 696.) Consequently, there is substantial evidence to support the ALJ's conclusion that Malone's opinion was "inconsistent . . . [because] Ms. Malone found the claimant's mental limitations to be significantly more severe than any other medical opinion." (*Id.* at 35.) A marked departure from the medical evidence is a germane reason for rejecting the opinion of an "other source," and there is sufficient evidence to uphold the ALJ's determination.

### 3.     Drs. Obitz and Campbell

LoPresto also challenges the weight the ALJ assigned to the conclusions of Drs. Obitz and Campbell. Dr. Obitz examined LoPresto in April 2006. (*Id.* at 284.) Like the other physicians, he diagnosed LoPresto with PTSD. (*Id.* at 287.) He assigned a GAF of 50, which means that he thought the symptoms were within the "serious" range. (*Id.*) Dr. Obitz stated his opinion that "the veteran's posttraumatic stress disorder would not preclude all employment. The veteran acknowledges he might work if he could decide what is the right job for him." (*Id.*) The ALJ assigned "substantial weight" to the

conclusions of Dr. Obitz "because he examined the claimant and his opinion is consistent with the medical evidence in the record." (*Id.* at 34.)

LoPresto asserts the ALJ cannot assign "substantial weight" to Dr. Obitz's report because Malone is the equivalent of a treating physician, citing *Orn*, 496 F.3d at 632–33. But *Orn* dealt with a licensed physician and thus is not applicable to this case for the reasons described above—the law does not place Malone on the same plane as a treating physician. The ALJ is thus not precluded from placing great weight on the report of an examining physician.

LoPresto next contends that the ALJ improperly interpreted Dr. Obitz's claim that LoPresto's symptoms "would not preclude all employment" to mean that LoPresto could perform "medium unskilled work" with movement[7] and social restrictions. "Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p (emphases in original). There is substantial evidence to justify the ALJ's interpretation of Dr. Obitz's opinion. Dr. Obitz found that LoPresto's PTSD causes him serious limitations in how he interacts with others, while at the same time he thought there was a subset of work of which LoPresto was capable. The ALJ concluded that LoPresto maintained the ability to do a level of work so long as he does not "interact with the public." This is a reasonable interpretation of Dr. Obitz's opinion. LoPresto argues vigorously that the opinion could mean something far more restrictive. The evidence, however, is open to two interpretations and the Court will not disturb the ALJ's choice among the two. *See Batson*, 359 F.3d at 1198 ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). Dr. Obitz physically examined LoPresto, and, although it was just one time, the fact of

---

[7] The movement restrictions appear to be based on LoPresto's physical ailments, none of which are raised as a basis for appeal by LoPresto in his brief.

that examination could lend greater weight to Dr. Obitz's opinion in the eyes of the ALJ. The ALJ did not err in giving "substantial weight" to Dr. Obitz's opinion.

Dr. Campbell, a state agency psychologist, reviewed LoPresto's VA records and Dr. Obitz's report. He concurred in the diagnosis of PTSD. (R. at 368.) He assigned LoPresto a GAF of 60. (*Id.* at 376.) In the opinion of Dr. Campbell, LoPresto faced mild restrictions in his activities of daily living and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 374.) There were moderate difficulties in maintaining social functioning. (*Id.*) Dr. Campbell found moderate limitations on LoPresto's ability to maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at 378–79.) On the other hand, he determined that LoPresto can learn and remember simple instructions and tasks, follow a schedule, make decisions and complete simple tasks on a consistent basis, adapt to changes and handle the normal stressors of full time employment, while recognizing that LoPresto "has limitations in working with and around others, but can work in a setting with limited public contact." (*Id.* at 380.) He concluded that LoPresto "can meet the expectations of full time employment doing simple tasks in a setting with [limited public contact]." (*Id.*) The ALJ assigned "significant weight" to Dr. Campbell's opinion because "the findings were consistent with the claimant's subjective symptoms, the objective medical evidence, and the evaluation of consultative examiner Dr. Nath and the medical opinion of examining physician Dr. Obitz." (*Id.* at 34.)

LoPresto's argument that Dr. Campbell's opinion could not be considered substantial evidence is incorrect. While a non-examining physicians' report cannot itself be the sole piece of substantial evidence, it can be part of the basis that supports the ALJ's decision. This occurs when there is congruity between the conclusions of the non-examining physician on the other medical evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ found that Dr. Campbell's opinion was consistent with

the opinions of other doctors and the symptoms reported by LoPresto. LoPresto claims that the ALJ's citation to the evaluation of Dr. Nath was in error because Dr. Nath did not have a full record before him. While that appears to be true, (R. at 342,) Dr. Nath's evaluation is medical opinion evidence that the ALJ was entitled to consider. *See* 20 C.F.R. § 404.1527. The ALJ could have placed "significant weight" on the opinion of Dr. Campbell because of its consistency with other evidence in the record.

### B.    LoPresto's Statements

LoPresto testified at the hearing about the degree of his mental and physical impairments. His described severe depression, irritability, and trouble sleeping. (R. at 52–78.) The ALJ articulated two primary reasons for finding much of his testimony incredible: (1) LoPresto's GAF scores fluctuated even as he reported improvement with medication; (2) LoPresto "made inconsistent statements regarding matters relevant to disability." (*Id.* at 33-34.)

The legal standard governing claimant credibility is a matter of dispute between the parties. The Commissioner relies on *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc), where the Ninth Circuit set out to "determine the appropriate standard for evaluating subjective complaints of pain in Social Security disability cases." *Id.* at 342. The *Bunnell* Court opined that once there has been objective medical evidence of an underlying impairment, the ALJ must make specific findings, supported by the record, for why he rejected the claimant's testimony on the severity of the pain. *Id.* at 345–46. This is to ensure that the ALJ "did not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Elam v. R.R. Retirement Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). Thus the Commissioner asserts that the standard governing claimant credibility is a "specific finding" standard, which it claims is more in line with the overall "substantial evidence" standard that governs these cases.

Many panels of the Ninth Circuit have subsequently held, however, that if there is objective medical evidence of an underlying impairment, "and there is no evidence of malingering, then the ALJ must give 'specific, clear and convincing reasons' in order to

reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The Commissioner claims that these cases, along with many others, have overruled the *Bunnell* standard in violation of the Ninth Circuit rule that only en banc panels can overrule existing precedent. *See United States v. Camper*, 66 F.3d 229, 232 (9th Cir. 1995). That is not the case. *Bunnell* articulated a general standard for dealing with claimant testimony. The many subsequent cases have addressed a subset of cases where there is also no evidence of claimant malingering. There is a "clear and convincing" standard for those situations. This Court cannot sit in judgment of the application of that standard, which is clearly the standard that governs claimant credibility in this circuit. Accordingly, the ALJ's reasons for finding LoPresto's testimony incredible must be "clear and convincing."

The first reason dealt with the fluctuation in GAF scores and reports that LoPresto's symptoms were less severe on medication. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). The Commissioner, however, has stated that "[t]he GAF scale, which is . . . endorsed by the American Psychiatric Association[, ] does not have a direct  correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,764–65 (Aug. 21, 2000). In other words, the GAF scores provide a very rough outline of a claimant's ability to function. As the ALJ noted, a GAF of 41-50 indicates serious symptoms and a score of 51-60 denotes moderate symptoms relating to the claimant's impairment in social occupation, or school functioning. (R. at 33, nn. 2–3.)

The ALJ concluded that LoPresto's GAF was likely 60. (*Id.* at 33.) The ALJ first noted that the GAF scores ranged from 65 to, more recently, 45. He nevertheless discounted the more recent low-end scores of 45 from Drs. Gonzalez and Patel, LoPresto's treating physicians, because those scores were "mainly attributable to the

claimant's self-reporting of symptoms" and "contrast[ed] sharply with . . . treatment notes showing improvement in the claimant's symptoms." (*Id.* at 33.) There is substantial evidence to support the ALJ's decision to assign less weight to the lower GAF scores. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Therefore, the effectiveness of medication can support a clear and convincing reason for discounting a claimant's testimony. The ALJ cites several instances where LoPresto reported "doing well" or showed improvement on the medication regiment for his mental impairments. (R. at 496, 644, 647.) That provides substantial evidence for the ALJ's conclusion that medication alleviated many of LoPresto's more debilitating symptoms and therefore that the lower GAF scores did not accurately reflect LoPresto's ability to function. While LoPresto may argue that the fact that medication helped control his symptoms is not necessarily inconsistent with his testimony and a lower GAF score, there is substantial evidence to support the ALJ's view. That is all that is required to affirm the ALJ's determination. *See Thomas*, 278 F.3d at 954. Because effective control through medication is a clear and convincing reason for rejecting claimant testimony, and there is substantial evidence to support the ALJ's determination, the ALJ had a proper basis to discount LoPresto's testimony.

The ALJ also stated that LoPresto "has made inconsistent statements regarding matters relevant to the issue of disability." (R. at 33.) Material inconsistency is a proper basis on which to reject claimant testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). The first alleged inconsistency is that LoPresto told Dr. Nath that he had panic attacks while driving but then stated in his Adult Function Report "that he has no trouble driving." (R. at 33–34.) The Adult Function Report asks the question "Do you drive?", and allows the claimant to answer yes or no. (*Id.* at 206.) LoPresto checked "Yes". (*Id.*) Although the ALJ did not directly refer to the any other evidence on this point in the specific discussion on LoPresto's credibility, the ALJ  cited

statements from both LoPresto's wife and Malone that LoPresto did drive in his decision. (*Id.* at 31, 35.) Just like the form LoPresto filled out, though, both of those forms involved a yes or no question—"Does the disabled person drive?" (*Id.* at 214, 222.) The ALJ's statement that LoPresto stated "he has no trouble driving" is an overstatement of the record. LoPresto, his wife, and Malone all stated that LoPresto could drive in answer to the same yes/no question. None of them stated that "he ha[d] no trouble driving." Nevertheless, that all three testified that he drives is evidence that they considered him capable of doing so. To the extent that LoPresto subsequently suggested that he was incapable of driving because of his panic attacks, the ALJ was entitled to consider the contrary evidence.

The second alleged inconsistency is that LoPresto told Dr. Nath that he had difficulty maintaining a job since he left the military in 1971, while the uncontroverted evidence is that LoPresto worked as a bus driver for almost thirty years. (*Id.* at 34.)  The report from Dr. Nath that the ALJ references reads, however: "[LoPresto] endorsed difficulty getting along with coworkers and taking direction or criticism from employers. As a result, he has been fired from multiple jobs due to his inability to get along with others. He stated the longest job he has had is over 20 years, however he was often isolated from others, performing deskwork." (*Id.* at 342.) Read literally, LoPresto arguably did not claim that he had difficulty keeping a job—just that he had difficulties with coworkers. LoPresto's actual statement that he had difficulty getting along with co-workers does not necessarily suggest that LoPresto is unable to work. Nevertheless, to the extent that the ALJ misinterpreted it as a claim that LoPresto could not hold a job in discrediting LoPresto's testimony generally, it does not provide sufficient support to do so.

Nevertheless, the third inconsistency cited by the ALJ is substantial evidence upon which he could discount LoPresto's credibility. The ALJ notes that while LoPresto claims depression, irritability, and thoughts of harming others, he reported that those symptoms were not present on February 26, 2009. In this same analysis in the same

section the ALJ also cites to other reports from LoPresto's treating physicians that show that on at least five of his most recent treatment visits, the treatment notes reflect that LoPresto's medication enabled him to control his symptoms. *See* Part II.A.2, *supra*. There is therefore substantial evidence to support the ALJ's determination that medication enabled LoPresto to control his symptoms. Several doctors on many occasions made reports to that effect. LoPresto focuses on the fact that the ALJ referenced only one of those occasions; nevertheless, the ALJ discussed several such instances in the same section of his analysis where he discussed LoPresto's credibility. Therefore, there was substantial evidence to support the ALJ's reliance on this inconsistency.

The final inconsistency relates to LoPresto's work experiences after his service as a bus driver. He worked at a golf course for portions of 2007 and 2008, and as a secretary of a credit union in 2005. (R. at 34.) These periods of work were all quite brief, and the secretary job was part-time. To the ALJ, "[t]he fact that the claimant's impairment did not prevent him from working at this time, suggests that the claimant stopped working because of termination, which is a reason unrelated to the allegedly disabling impairment. This work may also indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has reported." (*Id.* at 34.) At the hearing, LoPresto testified that he was terminated in both instances due to a "conflict with management." (*Id.* at 57–65.) If a claimant is terminated for reasons other than his impairment, there may be an inconsistency with his claim of inability to work. *See Elletson v. Astrue*, 319 F. App'x 621, 622 (9th Cir. 2009). That leaves open the question of whether LoPresto was terminated for reasons other than his impairment. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, failed, that he did not then experience pain and limitations severe enough to preclude him from maintaining substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually supported

his allegations of disabling pain.") He testified that he had a "short fuse" that made it difficult for him to work with people. (R. at 60.) Nevertheless, the ultimate connection between LoPresto's termination and his impairments remains attenuated. He never stated that he was fired because of his PTSD, depression, or anxiety. LoPresto stated only that he was fired in both instances because of conflicts with management. That evidence leaves the ALJ room to make reasonable inferences. The ALJ consequently chose between two reasonable interpretations of LoPresto's subsequent employment history. The Court cannot disturb that interpretation.

The ALJ put forth sufficiently clear and convincing reasons for discounting LoPresto's testimony that had evidentiary support. Therefore, the ALJ did not err in his treatment of LoPresto's testimony.

## C. RFC Determination

LoPresto finally claims that the ALJ erred when he stated in the RFC that LoPresto was capable of "unskilled work." (*Id.* at 30.) LoPresto asserts that the ALJ failed to conduct the function-by-function determination required by SSR 85-15 and instead just assumed that LoPresto was capable of unskilled work because he failed to meet or equal a listed mental impairment at step three of the five-step process. SSR 85-15 instructs the ALJ that he "must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work", and that "all limits on work-related activities resulting from the mental impairment must be described in the mental RFC assessment." *Id.* The ALJ assigned LoPresto a base of unskilled work and included the limitation that LoPresto "cannot interact with the public." (R. at 30.)

SSR 85-15 details the procedure for determining an RFC for someone in LoPresto's situation, who has recognized severe mental impairments.

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled

> work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Id.*

The record shows that the ALJ did just that. His RFC included a limitation that LoPresto "cannot interact with the public." (R. at 30.) That determination is supported by the statements from medical sources that the ALJ both lists and adopts. The medical evidence demonstrated LoPresto's mental impairments imposed a limitation on his ability to interact with the public. The ALJ noted how Dr. Nath determined

> that the claimant is able to remember very short, simple instructions, understand and carry out detailed instructions, maintain attention for brief periods of time, sustain an ordinary routine with supervision, and make simple work-related decisions. Additionally, Dr. Nath found that the claimant can ask simple questions, request assistance, accept instructions from supervisors, is aware of normal hazards, can take appropriate cautions, and can adhere to basic standards of neatness and cleanliness.

(*Id.* at 32.) There were no specific limitations there. In addition, the ALJ accepted the opinion of Dr. Campbell, who "found marked limitations in categories of social functioning, including the ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism, and the ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes." (*Id.* at 34.) The ALJ incorporated those concerns into the limitation on public interaction. Dr. Campbell "also summarized that the claimant can learn and remember simple instructions and tasks, follow a schedule, make decisions, complete simple tasks on a consistent basis, adapt to changes, and handle the normal stressors of full time employment." (*Id.*) That opinion provided no additional limitations.  The ALJ gave great weight to those opinions, and his RFC was consistent with it. There was consequently no error at this stage.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The ALJ did not err in the determinations that LoPresto challenges in this appeal.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 15th day of April, 2013.

_A. Murray Snow_

G. Murray Snow
United States District Judge